M. MEAGHER, Appellant, v. COURTNEY DRURY et al., Appellees.*

Deeds: RECORD: LANDS LOCATED IN UNORGANIZED COUNTY: CONSTRUCTION OF STATUTE. By an act of the legislature passed in the year 1853 Palo Alto county was attached to the county of Boone, the purposes for which it was so attached not being specified. In the year 1855 the same county was attached to the county of Webster, "for election, judicial and revenue purposes." Held, that a conveyance of lands in Palo Alto county, made in the year 1857, was properly recorded in Webster county, and that such record was constructive notice to a subsequent purchaser after the organization of Palo Alto county.

Appeal from Palo Alto District Court.—HON. GEORGE H. CARR, Judge.

MONDAY, OCTOBER 16, 1893.

ACTION in equity to quiet in the plaintiff the title to certain real estate. There was a hearing on the merits, and a decree in favor of the defendants. The plaintiff appeals.—Affirmed.

Geo. E. Clarke and Thos. O'Connor, for appellant.

Soper, Allen & Morling, for appellees.

ROBINSON, C. J.—The plaintiff claims to be the absolute and unqualified owner of one hundred and twenty acres of land, specifically described, situated in Palo Alto county. The land was purchased of the general government on the fifteenth day of June, 1857, by William

---

*The opinion filed upon the former submission of this case was withdrawn by the court, and for that reason is not published in these reports. It may be found in 53 N. W. Rep. 313.—REPORTER.

Stump, and a patent therefor was issued to him on the tenth day of December, 1859. In October, 1857, he and his wife conveyed the land to Christopher S. Whistler, by a warranty deed which was recorded in Webster county in February, 1858. In February, 1861, Whistler and wife, conveyed the land to Amanda T. Phillips; in July, 1862, Mrs. Phillips and husband conveyed it to C. T. Webb; in November, 1868, Webb and wife conveyed it to Otis J. Demmick; and in November, 1869, Demmick and wife conveyed it to the defendant Courtney Drury. The conveyance from Whistler and subsequent ones, were made by warranty deeds which were duly recorded in Palo Alto county. William Stump died in August, 1862. In July, 1884, after all the deeds mentioned had been recorded, his widow and heirs executed to John Jenswold, Jr., a conveyance of the land, and in October of the same year Jenswold executed a warranty deed which purported to convey it to the plaintiff. Drury and his grantors paid all the taxes on the land, or redeemed it from sales made for delinquent taxes for the years 1858 to 1883, inclusive, and the plaintiff has paid the taxes for the years 1884 to 1888, inclusive. When the plaintiff obtained his deed from Jenswold the records of Palo Alto county showed the entry of the land by Stump, and the conveyance thereof made by Whistler and others, in the chain of title through which Drury claims, but showed no conveyance from Stump to Whistler. The district court found and decreed that Drury is the owner of the land, and that the plaintiff recover the taxes he has paid, with interest. On a former submission of this cause we held that the decree of the district court was erroneous. A rehearing having been granted, the cause is again submitted for our determination.

The evidence satisfies us that the plaintiff purchased the land of Jenswold in good faith, for a valuable consideration, without actual notice of the deeds

through which Drury claims title. We are required to determine the effect of the recording in Webster county of the deed from Stump to Whistler. If it was properly recorded there, the plaintiff had constructive notice of it when he purchased from Jenswold, and acquired no title by his purchase; but if it was not properly so recorded, then the title to the land is vested in him.

I. Palo Alto county was established in the year 1851 by section 38 of chapter 9 of the Acts of the Third General Assembly, but it was not organized until after the general election of the year 1859. By section 1 of chapter 12 of the Laws of the Fourth General Assembly, enacted in 1853, it was attached to the county of Boone, but the purposes for which it was attached were not specified in the act. In the year 1855, by chapter 142 of the Acts of the Fifth General Assembly, Palo Alto was attached to Webster county "for election, judicial, and revenue purposes." It is contended by the appellant that, as the act of 1853 attached Palo Alto to Boone county without limitation in terms, it was so attached for all purposes, and that conveyances of land situated in Palo Alto could properly be recorded only in Boone county; that, as the act of 1855 attached Palo Alto to Webster county for election, judicial, and revenue purposes only, the county of Boone continued to be the one in which conveyances of Palo Alto county land should be recorded, until the organization of the latter was completed. The appellees contend that the recording of conveyances of land was for both judicial and revenue purposes, within the meaning of the act of 1855, and, therefore, that the deed in controversy was properly recorded in Webster county.

Section 1211 of the Code of 1851 was as follows: "No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded in the office of the recorder of deeds of the county in which the land

lies, as hereinafter provided." That provision was in force when the deed in question was recorded, and with slight change has remained the law until this time. But there was no recorder of deeds, and no office in which deeds could be recorded, in unorganized counties. Section 98 of the Code of 1851 provided that "unorganized counties and other districts now or hereafter annexed to any organized county for judicial, electoral or revenue purposes, shall, for those purposes respectively, be deemed to be within the limits of the county to which they are or may be so annexed, and to form a part thereof, unless otherwise provided by law." Fifty new counties were established in the year 1851 by chapter 9 of the Acts of the Third General Assembly. Chapter 95 of the acts of the same general assembly provided that three of the counties so established should become attached to Black Hawk county in case that should be organized before the next session of the general assembly "for judicial, elective and revenue purposes," and until such organization should be effected, Black Hawk and the counties to become attached to it were attached to Buchanan county "for judicial, elective, and revenue purposes." The title of the act was as follows: "An act to enable the counties of Bremer, Butler and Grundy to become attached, until organized, to Black Hawk county, and to attach said county to Buchanan county, until said organization." Chapter 8 of the Acts of the Fourth General Assembly, enacted in 1853, provided for the organization of certain counties therein named. By section 10 the territory included in Cass county was made to constitute one civil township, that included in Audubon county was made to constitute another, and that included in Adair was made to constitute a third, "the three for revenue, election, and judicial purposes constituting the county of Cass." The same act also attached the counties of Montgomery and Union to Adams, the county of Monona to the

county of Harrison, the counties of Crawford and Carroll to the county of Shelby, the counties of Ida, Sac, Buena Vista, Cherokee, Plymouth, Sioux, O'Brien, Clay, Dickinson, Osceola, and Buncombe, now Lyon, to the county of Wahkaw, now Woodbury, "for revenue, election, and judicial purposes." Section 8 of chapter 12 of the acts of the same general assembly attached the county of Chickasaw to Fayette "for election, revenue, and judicial purposes." By chapter 50 of the acts of the same general assembly the counties of Bremer, Butler and Grundy were attached to the county of Black Hawk "for judicial, elective, and revenue purposes." By chapter 8 of the Acts of the Fifth General Assembly the county of Carroll was attached to the county of Guthrie "for judicial, elective, and revenue purposes." Chapter 142 of the acts of the same general assembly attached the counties of Calhoun and Sac to the county of Greene, the counties of Wright, Humboldt, Pocahontas, Palo Alto, Kossuth, Hancock, Winnebago, Bancroft, now included in Kossuth, and Emmet to the county of Webster, and the county of Franklin to the county of Hardin, "for election, judicial, and revenue purposes."

In some cases, organized counties were attached to others for judicial purposes only, but it appears to have been the rule of the general assembly, when it attached an unorganized to an organized county, to state in effect that it was "for judicial, election, and revenue purposes." The only exception to that rule which we have observed is found in section 1, of chapter 12, of the Acts of the Fourth General Assembly, by which several unorganized counties were attached to others without any statement of the purposes for which they were so attached. By that section the counties of Mitchell, Howard, Floyd, Worth, and Franklin were attached to the county of Chickasaw, and by section 8 Chickasaw was attached to

Fayette "for election, revenue, and judicial purposes," as already stated. Thus a single act furnishes an example of the rule, and also the exception. What was the scope and effect of the first section, and what effect the attaching of Chickasaw to Fayette had upon the counties attached to Chickasaw, are questions which naturally arise, but which we need not determine. Several of the counties attached to others by the first section were afterwards attached to other counties for election, revenue, and judicial purposes, but there were numerous unorganized counties in the state, as those attached to Wahkaw by chapter 8 of the Acts of 1853, which were not attached for purposes not specified and not limited, but "for election, revenue, and judicial purposes." If it be true that those purposes did not include the recording of instruments affecting real estate, then there was no provision for recording instruments of that character affecting land in those counties until they were organized, and such instruments were of no validity as against subsequent purchasers for a valuable consideration without notice. We are satisfied that the general assembly did not intend that result. On the contrary, the general course of legislation in regard to unorganized counties, and the objects to be accomplished by it, satisfy us that in attaching an unorganized to an organized county "for judicial, electoral, and revenue purposes" the general assembly intended to make the unorganized county a part of the other for the general purposes for which counties were organized, excepting as might be otherwise provided. Among those purposes in the recording of the instruments affecting real estate.

The recording of a conveyance of real estate is not primarily for the purpose of aiding in the raising of revenue, but it has some relation to that end. It is usual, and within the intent of the law, to assess real estate for taxation in the name of the owner. This

may be important to correct errors in the assessment and payment of taxes, to establish a right to redeem from tax sales, and for other purposes, and the record of conveyances would afford a guide to officers charged with the duty of collecting public dues, and a means for determining questions which might arise in connection with the right of taxation and the duty to pay taxes. Moreover, when the legislative acts under consideration were enacted, the fees for recording instruments inured to the benefit of the counties in which they were recorded, and were a source of revenue. We conclude that the recording of instruments affecting real estate was included in the purposes, for which Palo Alto county was attached to Webster in the year, 1855, and that the deed of Stump to Whistler was properly recorded in the county last named.

It is claimed that if the deed to Whistler was properly recorded in Webster county, yet the Code of 1873 required that it be recorded in Palo Alto county, in order that the record might give constructive notice of it, and repealed the statute which authorized the recording in Webster county. This claim is not well founded. It is true that all public and general statutes passed prior to the session of the general assembly which enacted the Code of 1873 were repealed, but the repeal was subject to the limitations and exceptions expressed in the Code, one of which was that the repeal of an existing statute should not "affect any act done, any right accruing, or which has accrued or been established. * * *" Code, sections 47, 50. The recording of the deed in Webster county was an act done which created a right within the meaning of that provision. It follows from what we have said that the judgment of the district court must be AFFIRMED.

KINNE, J., took no part in this case.